# COPY

SUM-100

## SUMMONS **BY FAX**
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AGA Service Company, d/b/a Allianz Global Assistance; Jefferson Insurance Company; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH SMITH, an individual, on behalf of the general public

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 18 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By _____, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court, Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):* **20STCV31433** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Caleb Marker, Zimmerman Reed LLP, 2381 Rosecrans Ave., Suite 328, Manhattan Beach, CA 90245. Tel: 877-500-8780

| | | | |
|---|---|---|---|
| DATE: AUG 18 2020 *(Fecha)* | Sherri R. Carter, Clerk *(Secretario)* | Clerk, by STEVEN DREW | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* **AGA Service Compan, d/b/a Allianz Global Assistance**

   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courts.ca.gov* |

# COPY

SUM-100

**SUMMONS** **BY FAX**
*(CITACION JUDICIAL)*

| | |
|---|---|
| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AGA Service Company, d/b/a Allianz Global Assistance; Jefferson Insurance Company; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH SMITH, an individual, on behalf of the general public

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 18 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By _____, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Los Angeles Superior Court<br>Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):*<br>**20STCV31433** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Caleb Marker, Zimmerman Reed LLP, 2381 Rosecrans Ave., Suite 328, Manhattan Beach, CA 90245. Tel: 877-500-8780

| DATE: AUG 18 2020<br>*(Fecha)* | Sherri R. Carter, Clerk | Clerk, by<br>*(Secretario)* | STEVEN DREW | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

| | |
|---|---|
| [SEAL] | 1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☒ on behalf of *(specify):*  **Jefferson Insurance Company**<br><br>under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)<br>☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)<br>☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)<br>☐ other *(specify):*<br>4. ☐ by personal delivery on *(date)* |

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

# COPY

**BY FAX**

1    CALEB MARKER (SBN 269721)
     Email: caleb.marker@zimmreed.com
2    FLINN T. MILLIGAN (SBN 323042)
     Email: flinn.milligan@zimmreed.com
3    ZIMMERMAN REED, LLP
     2381 Rosecrans Ave., Suite 328
4    Manhattan Beach, CA 90245
     (877) 500-8780 Telephone
5    (877) 500-8781 Facsimile

6    *Attorneys for Plaintiff*

7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 1 8 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By_____, Deputy
        Steven Drew

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF LOS ANGELES**

10   SARAH SMITH, an individual, on behalf of the          CASE NO.:
     general public,
11                                                         Assigned to:    **20STCV31433**
                     Plaintiff,
12                                                         **CLASS ACTION COMPLAINT**
     v.
13                                                         1. Void Contract / Recission / Restitution;
     AGA Service Company, d/b/a Allianz Global            2. Violation of Cal. Bus. & Prof. Code § 17200
14   Assistance; Jefferson Insurance Company; and            *et seq.*;
     DOES 1-100, inclusive,                                3. Money   Had   and   Received   /   Unjust
15                                                            Enrichment;
                     Defendants.                           4. Establishment of Constructive Trust.
16

17

18                                                         **(DEMAND FOR JURY TRIAL)**

19

20

21

22

23

24

25

26

27

28
                                        COMPLAINT

CALEB MARKER (SBN 269721)
  Email: caleb.marker@zimmreed.com
FLINN T. MILLIGAN (SBN 323042)
  Email: flinn.milligan@zimmreed.com
ZIMMERMAN REED, LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SARAH SMITH, an individual, on behalf of the general public, | CASE NO.: |
| Plaintiff, | *Assigned to:* |
| v. | **CLASS ACTION COMPLAINT** |
| AGA Service Company, d/b/a Allianz Global Assistance; Jefferson Insurance Company; and DOES 1-100, inclusive, | 1. Void Contract / Recission / Restitution;<br>2. Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*;<br>3. Money Had and Received / Unjust Enrichment;<br>4. Establishment of Constructive Trust. |
| Defendants. | |
| | **(DEMAND FOR JURY TRIAL)** |

COMPLAINT

Plaintiff Sarah Smith ("Plaintiff"), individually and on behalf of the general public, by and through the undersigned counsel of record, hereby brings this Complaint against Defendants AGA Service Company (d/b/a Allianz Global Assistance and Allianz Worldwide Partners)("AGA") and Jefferson Insurance Company ("Jefferson")(hereinafter AGA and Jefferson are collectively referred to as "Defendants") and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and on information and belief as to all other matters, as follows:

## I.    **INTRODUCTION**

1.    This action involves payment of insurance commissions to unlicensed entities, which renders the transactions unlawful, all contracts related to the payment void and amounts paid by consumers like Plaintiff to fund the commissions subject to refund. Insurance Code §§750, 754, 1631, 1633; Civil Code §§1599, 1608, 1689, 1692. Specifically, while purchasing tickets to concerts and sporting events on websites operated by Ticketmaster L.L.C. ("Ticketmaster") and Live Nation Entertainment, Inc. ("Live Nation) (hereinafter collectively referred to as "Ticketmaster/Live Nation"), Ticketmaster/Live Nation encouraged consumers like Plaintiff to purchase "Event Protection Insurance", issued by Defendant, in which the premium charged would, unbeknownst to consumers, be split with Ticketmaster/Live Nation, with the latter receiving the majority of the payment as an unlawful "commission." While neither Ticketmaster or Live Nation have never been licensed to sell or transact insurance in the State of California (or any other state), that material fact was never disclosed to consumers. As such, both payment and receipt of such commissions was unlawful and in violation of the public policy of this state. *Id.* As a result, Plaintiff, individually and on behalf of the Class and the general public, seeks both monetary relief and public injunctive and declaratory relief: (a) determining that the contracts Plaintiff and the Class and general public entered into with Defendants, and/or their affiliates and agents, for ticket Event Protection Insurance are void *ab initio* and any amounts paid to fund unlawful commissions must be refunded, restored and/or the equivalent amount awarded as damages; (b) preventing Defendants' still ongoing conduct of overcharging consumers and splitting premiums and commissions with unlicensed persons not legally able to transact insurance and receive commissions; (c) requiring Defendants to inform ticket purchasers prior to sale of the premium splitting

1  arrangement with Ticketmaster/Live Nation; (d) requiring Defendant to notify past purchasers of Event

2  Protection Insurance of the premium splitting arrangement with Ticketmaster/Live Nation and of the

3  fact that commissions were unlawfully charged and provided to unlicensed entities; (e) other corrective

4  notice as deemed just, reasonable and otherwise necessary by the Court.

5      2.    At relevant times, Plaintiff, like other customers of Ticketmaster/Live Nation who

6  purchased tickets to sporting and musical events through Ticketmaster/Live Nation's websites

7  (www.ticketmaster.com and www.Live Nation.com), purchased "Ticketmaster Event Protection

8  Insurance" through https://www.eventticketprotection.com/tm/home (hereinafter "Event Protection

9  Insurance"), paying all insurance premiums out-of-pocket. Ticketmaster's website describes the

10 insurance at issue as follows, in pertinent part: "Ticketmaster Event Protection Insurance. Why Event

11 Protection Insurance? Event Ticket Protector from Allianz Global Assistance can reimburse up to 100%

12 of your ticket purchase if you can't make the event for a covered illness, injury, traffic accident, and

13 more. More than 40 million people choose us to protect their event tickets, travel plans, registration fees,

14 and more. We have a 97% customer satisfaction rating, and our award-winning assistance team is

15 available to help anytime, anywhere." https://www.eventticketprotection.com/tm/home. Live Nations'

16 website contains similar language.

17     3.    The Event Protection Insurance that Plaintiff purchased through Ticketmaster/Live

18 Nation's websites was issued by Defendant pursuant to a common course of dealing and contracts. *See*

19 https://www.allianzworldwidepartners.com/usa/terms-and-conditions/terms_of_use.  All    of    those

20 transactions occurred on or through Ticketmaster/Live Nation's websites and servers which are

21 controlled and managed by Ticketmaster/Live Nation in and from their facilities in California, injuring

22 class members in California and nationwide. All "commissions" at issue were then paid to and controlled

23 by Ticketmaster/Live Nation in California.

24     4.    Ticketmaster and Live Nation acted as consumers' insurance broker's or agents in

25 procuring the insurance, "highly recommending" that they purchase it by accepting the offers they

26 presented on their websites during the ticket purchase check out process. While lower cost alternatives

27 for event protection coverage existed, Ticketmaster/Live Nation did not present those options to

28

consumers. Consumers like Plaintiff therefore overpaid for Event Protection Insurance. This was because Ticketmaster/Live Nation would not receive the same commission payment had Event Protection Insurance been purchased through third-party insurers that did not have an agreement or understanding to pay commissions to unlicensed entities like Ticketmaster/Live Nation, and because had reasonable consumers such as Plaintiff been aware that the bulk of the cost was simply an undisclosed kickback, they would not have been willing to pay that amount. The undisclosed agreement to pay Ticketmaster and Live Nation commissions despite being unlicensed was essentially a commercial bribe.

5.    The Event Protection Insurance premiums on the polices purchased were charged to Plaintiff in addition to the numerous itemized service and administrative fees Ticketmaster/Live Nation charged consumers like Plaintiff when selling tickets to events, and which more than fully compensated Ticketmaster/Live Nation for any and all goods and/or services provided by Ticketmaster/Live Nation in relation to the transaction(s).

6.    However, in addition to these fees, and undisclosed to the purchaser, Ticketmaster/Live Nation was paid commissions, referral fees and/or other payments by Defendant for each Event Protection Insurance policy sold, including Plaintiff's. These kickbacks often constituted more than half of the total premium charged to the purchaser, greatly inflating the cost of the policy.

7.    Despite receiving commissions for the sale of insurance, albeit covertly, Ticketmaster/Live Nation is not and has never been licensed as an insurance agent or broker in California or any other state, and there are no exceptions or exemptions to the general requirement of licensure that apply to Ticketmaster/Live Nation in this matter. Therefore, Defendants could not and cannot lawfully pay commissions – much less secret, undisclosed commissions making up the bulk of the "premium" – to Ticketmaster/Live Nation to act as its insurance broker or agent, and Ticketmaster/Live Nation could not and cannot lawfully receive any insurance commissions, referral fees, or other compensation for selling insurance, including Event Protection Insurance. Cal. Insurance Code §§ 750, 754, 1631, 1633. As such, any contract between Plaintiff and Defendants for insurance resulting in payment of a portion of the premium or other consideration to an unlicensed entity in relation to the referral, is unlawful and

1    void *ab initio*, requiring restitution and refunds, amongst other appropriate relief. Civil. Code §§ 1599,

2    1608, 1689, 1692; Bus. & Prof. Code § 16600. Further, any contracts between Ticketmaster/Live Nation

3    and Defendants for commissions, referral fees or other payments for the sale of insurance are illegal,

4    contrary to public policy, and void *ab initio*, requiring restitution and refunds, amongst other appropriate

5    relief. *Id.* As the insured party, Plaintiff was (a) a third-party beneficiary of any such contract(s) between

6    Ticketmaster/Live Nation and Defendants; and/or (b) Ticketmaster/Live Nation's principal to which

7    Ticketmaster/Live Nation was acting as an unlicensed insurance broker or agent in breach of their duties.

8        8.    Defendants were at all times aware, or should have been aware, that Ticketmaster/Live

9    Nation has never been licensed as an insurance agent or insurance broker in California or any other state,

10    and at no time did any exceptions or exemptions from the general requirement of licensure apply to

11    Ticketmaster/Live Nation to allow it to sell insurance as it did to Plaintiff, the Class, and the general

12    public.

13        9.    Both Ticketmaster and Live Nation are based in Beverly Hills, California, and conducted

14    the insurance solicitation and sales activities challenged herein in and from offices and facilities in

15    California, which emanated to and affected consumer's transactions nationwide. Consumers like

16    Plaintiff purchased the Event Protection Insurance through Ticketmaster's and Live Nation's websites

17    which were operated and controlled by Ticketmaster and Live Nation in and from their offices in Beverly

18    Hills, California. Defendant transacted with Ticketmaster and Live Nation in California, facilitating the

19    transfer of funds that consumers paid as premiums, to Ticketmaster and Live Nation in California as

20    commissions. The unlawful commissions were paid to Ticketmaster and Live Nation in California, and

21    received in California. As such, California law applies to Plaintiffs' transactions. To the extent other

22    state's laws also apply to Defendants' conduct, those laws are substantially similar to California's in all

23    material respects. No state allows unlicensed and otherwise unauthorized insurance agents to collect

24    commissions on the sale of or otherwise transact in insurance. *See* Virginia Code 38.2-1812 (unlawful

25    to pay or accept commissions to unlicensed person). *See also Friedman v. AARP*, 855 F3d 1047, 1052

26    n.5 (9th Cir. 2017) ("The acceptance of an insurance commission constitutes 'transacting' insurance.");

27

28

*see also Fewel & Dawes, Inc. v. Pratt,* 17 Cal. 2d 85, 89 (Cal. 1941) ("[s]ince [plaintiff] was at no time licensed as an insurance broker or agent, he could not legally solicit insurance or receive commissions").

10.  It is unlawful for an unlicensed person to receive a commission for selling insurance. Insurance Code §§ 750, 754, 1631, 1633. It is also unlawful for an unlicensed person to receive a referral fee for directing business to an insurance company. Contracts for services in which the performing party must be licensed to perform, but are not, are void *ab initio*. Cal. Civil Code §1608. Restraints on business activities that require a license to perform are valid. *See generally* Bus. & Prof. Code § 16600. As a result, Plaintiff's and all other contracts for Event Protection Insurance in which Ticketmaster/Live Nation retained or were otherwise paid a commission, referral fee and/or other amount are void *ab initio*. The Court should use its equitable powers to enjoin Defendants' ongoing and continuing conduct engaging in such activities, and place the parties back in the position that they were before those unlawful contracts were executed. Any further insurance premiums, commissions, referral fees or other amounts paid to Ticketmaster/Live Nation in relation to Event Protection Insurance policies purchased by Plaintiff and the general public should be placed in a constructive trust or other fund for the benefit of consumers, to be disbursed at the Court's direction. Finally, Defendants should be enjoined from continuing their misrepresented and deceptive marketing of Event Protection Insurance, both in terms of the secret kickback to Ticketmaster/Live Nation and Ticketmaster/Live Nation's unlicensed status and disqualification to receive any portion of the premium.

## II.  THE PARTIES

11.  Plaintiff Sarah Smith, f/k/a/ Sarah Valencia ("Plaintiff"), is an individual domiciled and a resident of the state of California. Plaintiff currently lives in Sacramento, California.

12.  At all relevant times, Plaintiff purchased tickets to entertainment events through Ticketmaster/Live Nation's websites, along with Event Ticket Insurance for which she was charged an additional premium. The premium charged was paid in addition to the ticket price and the numerous other service fees charged by Ticketmaster/Live Nation for its services issuing the tickets. Whether directly or indirectly, without Plaintiff's knowledge and consent, part of the premium that she paid for

1  Event Protection Insurance was ultimately paid to Ticketmaster/Live Nation by Defendants pursuant to

2  a course of dealing and contracts between those parties.

3      13.    Plaintiff was injured and suffered out-of-pocket loss as a result of Defendants' conduct

4  complained of herein. The sale of insurance by unlicensed sales brokers or agents for secret commissions

5  is unlawful, unfair and unconscionable, especially when conducted in timed and rushed transactions

6  where consumers like Plaintiff are not provided all material facts about the transaction including that

7  the majority of insurance premium demanded and paid went to fund a rebate to an unlicensed entity who

8  could not legally accept it and had already charged numerous service fees. Plaintiff relied on Defendants

9  to disclose all material facts regarding the Event Protection Insurance transaction including that

10 Ticketmaster/Live Nation were unlicensed and therefore, could not collect or receive any commission

11 or other amounts in relation to the premium paid. Due to the unlawful component equal to the

12 commission, the price Plaintiff paid for the Event Protection Insurance premium was inflated and

13 excessive and Plaintiff was overcharged, and consequently overpaid. Plaintiff valued insurance where

14 the majority of the premium was to fund an unlawful commission to an unlicensed entity

15 (Ticketmaster/Live Nation), which she was already paying numerous excessive service fees to, less than

16 insurance that did not have that attribute. Defendants' conduct failing to disclose these material facts

17 caused Plaintiff financial injury and out of pocket loss as, like other consumers engaging in similar

18 transactions, she paid Defendants money that she otherwise would not have but for Defendants' material

19 omissions. Plaintiff valued the money that she parted with more than the insurance she purchased, and

20 because of Defendants' material omissions, Plaintiff parted with more money than she otherwise would

21 have been willing to expend, i.e., Plaintiff paid more for the Event Protection Insurance than she actually

22 valued the product. That increment, the extra money paid, is economic injury.

23      14.    Defendants' concealment of material facts prevented Plaintiff from taking appropriate

24 action in the course of the insurance transactions. Upon information and belief, the commission structure

25 and rate is maintained by Defendants and Ticketmaster/Live Nation as confidential and not publicly

26 available to customers. The short time available to complete ticket transactions on risk of losing secured

27 tickets, that are scarce (due to limited venue capacity) and/or in favorable locations (more desirable

28

sections and/or rows) within the venue, creates duress for the purchaser and an inability to review all terms or ask questions before having to make a final purchasing decision. In turn, purchasers like Plaintiff rely on Defendants and Ticketmaster/Live Nation to disclose all material facts and terms (like those at issue here regarding Event Protection Insurance premiums) conspicuously, and not to conceal, hide or bury them in small and verbose print (or keep them entirely secret). Plaintiff would not have completed the Event Protection Insurance transaction with Defendants, after already paying Ticketmaster/Live Nation significant service, administrative, processing and other fees that more than fully compensated it for any and all work performed in relation to the transaction, had she been made aware that the insurance premium included additional compensation for Ticketmaster/Live Nation in the form of a commission or referral fee, and had Plaintiff known Ticketmaster/Live Nation were unlicensed and legally unable to collect such a fee. The failure of Defendants and Ticketmaster/Live Nation to conspicuously disclose such facts during the checkout procedure was material to Plaintiff as like other reasonable consumers she would have wanted to know the concealed information in advance of the point she finalized the purchase, and had she been so advised in advance, would have acted differently. But for Defendants' and Ticketmaster/Live Nation's concealment, Plaintiff would still possess the amount paid for Event Protection Insurance.

15.    By way of the foregoing, Defendants caused Plaintiff to lose money as a result of unfair competition and to be injured in fact. Had Defendants disclosed to consumers like Plaintiff that the majority of the premium price quoted was to fund an unlawful commission to Ticketmaster/Live Nation, Plaintiff would have demanded that Defendants reduce the premium to exclude the unlawful portion and paid less, or not purchased the Event Protection Insurance retaining all of her money. Plaintiff requests that any contracts be declared void to the extent they involve the payment and/or receipt of unlawful commissions, that restitution be provided and the parties be placed in the position they were prior to its consummation. The separate contract for the tickets purchased or insurance coverage should be left unchanged, to the extent possible. See e.g., Civil Code §1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."). Restitution and/or damages equal to no less

than the amount of the amount of the unlawful commissions exchanged should be provided to Plaintiff and the members of the Class and the practices enjoined, amongst other appropriate relief.

16.    Plaintiff is a regular purchaser of tickets to entertainment events through Ticketmaster/Live Nation' websites and intends to continue purchasing tickets to entertainment events in the future but is at risk of future injury from Defendants' conduct if she does. Ticketmaster/Live Nation hold monopoly power over the tickets they sell to events. As a practical matter, Plaintiff and other consumers cannot therefore purchase tickets to those same entertainment events she wishes to attend, at retail / face value prices, through other ticket companies or competitors of Ticketmaster/Live Nation. To the extent such transactions are possible, lower prices providers (e.g., Markel Insurance and/or others) exist. Ticketmaster/Live Nation and Defendants have an arrangement whereby Ticketmaster Live Nation exclusively markets and promotes Defendants' Event Protection Insurance products as part of their online check out process that consumers complete when purchasing tickets. Defendants' unlawful practice of exchanging, and Ticketmaster/Live Nation's unlawful practice of receiving, commissions or referral fees on insurance premiums paid by consumers while unlicensed is ongoing and continuing. Plaintiff would like to purchase and intends to purchase Event Protection Insurance for certain events she purchases tickets to in the future, to guard against the unanticipated risks of event disruption, but cannot properly do so due to Ticketmaster/Live Nation' unlicensed status and receipt of commissions and referral fees. The Court therefore should protect Plaintiff and the general public by enjoining Defendants' exchange of commissions, referral fees or other amounts to unlicensed persons in relation to Event Protection Insurance sales. Absent the public injunction requested, Plaintiff and others in the general public will be subject to future harm and financial injury from Defendants' ongoing unlawful conduct on future transactions she intends and is likely to complete.

17.    Defendant AGA Service Company is a Virginia corporation headquartered in Richmond, Virginia. AGA (an acronym of Allianz Global Assistance) is the subsidiary of Allianz SE responsible for insurance products sold in the United States.[1]

---

[1] At time of drafting, the following information appeared on the Ticketmaster website www.ticketmaster.com/insurance:

18.     Defendant Jefferson Insurance Company is a New York corporation headquartered in Richmond, Virginia. Jefferson Insurance Company is a wholly owned subsidiary of Allianz and provides underwriting services for its insurance products sold in the United States.

19.     Nonparty Ticketmaster L.L.C. ("Ticketmaster") is a Virginia corporation headquartered in Beverly Hills, California (9348 Civic Center Drive, Beverly Hills, CA 90210) and/or Hollywood, California (7060 Hollywood Blvd, Hollywood, CA 90028). Ticketmaster is the live-event ticket sales and distribution subsidiary of Live Nation Entertainment, Inc.

20.     Nonparty Live Nation Entertainment, Inc. ("Live Nation") is a Delaware corporation headquartered in Beverly Hills, California (9348 Civic Center Drive, Beverly Hills, CA 90210) and/or Hollywood, California (7060 Hollywood Blvd, Hollywood, CA 90028). Live Nation exercises control over Ticketmaster with respect to the conduct alleged herein. Live Nation and Ticketmaster have common ownership and management. Live Nation is Ticketmaster's alter ego.

21.     Plaintiff does not know the true names and capacities of the Defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and/or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when the same are ascertained.

---

Terms, conditions, and exclusions apply. Insurance benefits are underwritten by Jefferson Insurance Company (NY, Administrative Office: 9950 Mayland Drive, Richmond, VA 23233), rated "A+" (Superior) by A.M. Best Co., under Jefferson Form No. 105 series. Plan(s) only available to U.S. residents and may not be available in all jurisdictions. AGA Service Company is the licensed producer and administrator of this plan and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage due to the affiliation between AGA Service Company and Jefferson Insurance Company. Plans include insurance benefits and assistance services. Non-Insurance benefits / products are provided and serviced by AGA Service Company. Any Non-Insurance Assistance services purchased are provided through AGA Service Company. Except as expressly provided under your plan, you are responsible for charges you incur from third parties. Contact AGA Service Company at 800-284-8300 or 9950 Mayland Drive, Richmond, VA 23233 or customerservice@allianzassistance.com.

9

22.     Plaintiff is informed, believes, and based thereon alleges that Defendants and DOE Defendants, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to, have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

### III.     JURISDICTION & VENUE

21.     This Court has jurisdiction over this matter as the events in question took place in California and this County. All class members' insurance sales occurred in California, through Ticketmaster's and Live Nations' websites and platforms, located and/or controlled from Ticketmaster's and Live Nations' offices there (including, but not limited to those located at 9348 Civic Center Drive, Beverly Hills, CA 90210 and/or 7060 Hollywood Blvd, Hollywood, CA 90028). Defendants and Ticketmaster/Live Nation exchanged and remitted the unlawful insurance commissions at issue in Beverly Hills and/or Hollywood, California. Ticketmaster and Live Nation received and controlled the commissions received from Defendants in and from their principal offices in Beverly Hills and/or Hollywood, California. Further, Ticketmaster/Live Nation operated and/or controlled the websites which facilitated the marketing and promotion for, the sale of insurance, and payment of unlawful commissions and premiums by Plaintiff and the Class in and from their principal offices in Beverly Hills and/or Hollywood, California. Furthermore, Defendants directed their deceptive marketing and sales practices towards class members, such as Plaintiff, with knowledge of their location due to the information provided in the ticket purchase chain. Additionally, Defendants routed their entire marketing plan in relation to Event Protection Insurance through the websites Ticketmaster and Live Nation operated and controlled in and from California, with the intent of communicating with, and selling insurance to, consumers nationwide. In turn, significant events and transactions relative to the parties' disputes occurred in this state and Los Angeles County.

22.     Venue is proper because a substantial part of the events and omissions giving rise to this action occurred in this County.

23.     No contract between Plaintiff and the Class and Defendants is subject to binding arbitration. Rather, the contracts specify that arbitration may be requested and conducted by mutual assent only.[2] Additionally, as Plaintiff's Complaint seeks public injunctive relief, such relief cannot be waived. Cal. Civil Code. §3513. "Public injunctive relief" under consumer protection laws and false advertising laws "is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955, 393 P.3d 85, 89-90 (2017). That is what Plaintiff seeks here. Members of the general public are not aware of the deceptive conduct complained of herein and Plaintiff, through this proceeding, seeks to enjoin and prevent future injury from that conduct in which not only Plaintiff, but more broadly, members of the general public, remain threatened. The harmful practices at issue are ongoing and are likely to recur. Unless enjoined, Defendants will continue to unlawfully charge for and pay unlawful insurance commissions funded by Class members and the general public. Plaintiff seeks an order requiring Defendants to immediately cease the wrongful conduct set forth herein, and enjoining Defendants from continuing to falsely advertise or conceal material information and conduct business via the unlawful, deceptive and unfair business practices complained of herein. Once Plaintiff's request is granted, the general public will benefit. Any benefit to Plaintiff individually from the injunction sought is incidental to the general public benefit of enjoining the challenged practices.

## IV.     FACTUAL ALLEGATIONS

### A.  General Allegations Applicable to All Counts

24.     Defendant AGA and Jefferson are subsidiaries of Allianz SE, one of the largest insurance companies in the world.

25.     Ticketmaster, based in Beverly Hills, California, is the world's largest ticket agency company, issuing and distributing tickets to sporting and entertainment events throughout the United States, as well as other countries. On its website (which is linked to parent Live Nation's website), it

---

[2] Plaintiff is currently engaged in arbitration against Ticketmaster and Live Nation for their role in the dispute, pursuant to the arbitration agreement in the contract between Plaintiff and those parties.

11

COMPLAINT

describes itself as follows: "Ticketmaster is the global leader in ticket management for large-scale sports and entertainment, specializing in sales, marketing, and distribution. As the largest ticket marketplace in the world, Ticketmaster is also the number one event search platform trusted by billions of live event fans. Ticketmaster powers artists, promoters, venues, campuses, and more with the world's leading enterprise-grade ticketing software and services, selling over 500 million tickets annually in 30 countries worldwide and partnering with over 12,000 global clients. Ticketmaster's portfolio includes Front Gate Tickets, TicketWeb, Universe, IOMEDIA, and Elevate." https://www.Live Nation.com/ticketmaster/.

26. Live Nation is an American events promoter and venue operator based in Beverly Hills, California. Formed in 1996, as SFX Entertainment, the company's business was built around consolidating concert promoters into a national company. Live Nation is currently the largest live entertainment company in the world.[3] Live Nation currently trades on the New York stock exchange under the symbol LYV. In its Form 10-K, Live Nation indicates that it believes that it is the world's leading live entertainment ticketing sales and marketing company, based on the number of tickets sold. *See* Live Nation Entertainment, Inc. Form 10-K for fiscal year ending December 31, 2018 at page 2, available at https://investors.Live Nationentertainment.com/sec-filings (last visited December 13, 2019). It describes its core business as "the promotion of live events including ticketing, and sponsorships and advertising." *Id.* at p. 3.

27. On January 25, 2010 Live Nation merged with Ticketmaster Entertainment LLC, and it became a wholly owned subsidiary of Live Nation Entertainment, Inc. Effective with the merger, Live Nation changed its name to Live Nation Entertainment Inc. In 2010, Ticketmaster and Live Nation merged to form Live Nation Entertainment, Inc.

---

[3]  *See* https://www.Live Nationentertainment.com/ ("As the world's leading live entertainment company, we are privileged to work with artists to bring their creativity to life on stages around the world. Whether it's two hours at a packed club, or an entire weekend of sets at a festival, a live show does more than entertain. It can uplift, inspire and create a memory that lasts a lifetime. Bringing 30,000 shows and 100+ festivals to life and selling 500 million tickets per year is a massive undertaking, made possible by our 44,000 employees worldwide. But just because we are big doesn't mean we do things the same way as other companies of our size. ...Live Nation produces more concerts, sells more tickets, and                                                                                                    connects more    brands   to    music    than    anyone    else    in    the    world.    Once    you    take    a look    at    our    global    live    entertainment    platform,    you'll    understand    why we're the market leader across all three of our core industries....").

28.     Both Ticketmaster and Live Nation sell tickets to various sporting and entertainment events consumers in the State of California. Ticketmaster/Live Nation sell millions of tickets in California each year to sporting and entertainment events. Each transaction is made in a common and typical way using Ticketmaster/Live Nation's electronic programs on their websites. All of the ticket sales are generated on Ticketmaster/Live Nation's websites (www.ticketmaster.com and www.Live Nation.com) using common computer programs and software where consumers self-select or are assigned a seat to the particular event they wish to attend, and then "check out" paying for the tickets along with any attendant service fees demanded using a credit or debit card. The physical or electronic tickets purchased are then delivered to the purchaser.

29.     Each ticket transaction in which Event Protection Insurance is purchased by a consumer like Plaintiff involves at least three contracts: (a) the contract between the consumer and Ticketmaster/Live Nation for the event tickets and related "services" for which Ticketmaster/Live Nation receives specific fees and commissions, including for the procurement of Event Protection Insurance, all of which are ultimately paid by the consumer, directly or indirectly; (b) the contract between the consumer and Defendants for event protection insurance coverage (*i.e.*, the policy); (c) the contract between Ticketmaster/Live Nation and Defendants whereby Defendants agree to have Ticketmaster/Live Nation retain or be paid indirectly through Defendants insurance commissions based on the price of the ticket. While the details of this contract are undisclosed, Plaintiff and other consumers purchasing Event Protection Insurance are third-party beneficiaries of the contract in (c) between Ticketmaster/Live Nation and Defendants as licensing laws are for the protection of insurance purchasers and entities transacting insurance must be licensed to lawfully receive commissions.

30.     The Event Protection Insurance rates that Defendant issues are not filed with, or approved by, the California Department of Insurance.

31.     The Event Protection Insurance is not travel insurance. Ticketmaster/Live Nation is not a travel retailer. Ticketmaster/Live Nation sells tickets to live events, not travel goods or services (e.g., airline, rail, boat or bus tickets; hotel rooms; ground transportation).

32. With regard to the first contract described in ¶29(a) above, as part of each ticket sale, before completing the transaction on Ticketmaster/Live Nation's websites and securing the event tickets, the customer is required to make a selection accepting or declining Event Protection Insurance offered for sale by Ticketmaster/Live Nation, described as follows:

Ticket Insurance

Get reimbursed up to 100% with Event Protection Insurance for an additional $XX.XX per ticket. *Limited time offer - not available after purchase.

It's inexpensive for the peace of mind it can give you when something unexpected happens. If you can't attend this event for a number of reasons like covered illness, airline delays, traffic accidents, weather emergencies, if you are required to work, and more, you'll be reimbursed for this purchase. Why insure your tickets? Event Protection Insurance insures your financial investment of the event tickets including taxes and shipping costs (up to the amount of your plan limits) should you not be able to attend the event for a covered reason. Protection also includes parking and other event related items that have been added to your order. Recommended, offered and sold by Allianz Global Assistance. Underwritten by Jefferson Insurance Company. Terms and exclusions (incl. for pre-existing conditions) apply. Plan details and disclosures. By clicking yes, you authorize Ticketmaster to send your name, address, and credit card information to AGA Service Company, who will charge your card on the terms described above.

Free Look Period: If you're not completely satisfied, you have 10 days or more (depending on your state of residence) to request a refund if your event hasn't occurred or you haven't filed a claim. Premium is non-refundable after this period.

* Selection Required

⌒  Yes , Protect my Ticket Purchase to [Performer] at [Arena/Venue] on [Date]. (Highly Recommended)

⌒  No, do not protect my [Performer] ticket purchase.
I understand this decision may put my $[ticket cost] at risk.

81,140 people protected their tickets in the last 3 days

Read what a recent customer had to say about ticket insurance:

"Will never purchase tickets without it again!" - Tanya H., Alpharetta, GA

14

COMPLAINT

> Another Ticketmaster customer protected their ticket purchase a minute
> ago.

33.     Unless the consumer makes an affirmative selection accepting or declining the Event Protection Insurance on the Ticketmaster/Live Nation website page, they cannot complete their ticket purchase transaction(s) and secure the desired ticket(s) to the event.

34.     With regard to the first contract described in ¶26(a) above, in offering Event Protection Insurance when selling tickets on their websites, Ticketmaster/Live Nation acts as the ticket purchasers' insurance agent and/or broker. Insurance Code §§ 1621, 1623. In selling tickets and offering supplemental Event Protection Insurance coverage, Defendants enter into an express or implied contract to act as each consumer's insurance agent and/or broker. *See Tanner Const, Inc. v. Hub Int'l Insurance Services, Inc.*, 169 Cal. Rptr.3d 39 (2014) ("Generally, an insurance agent acts only as the agent for the insured in procuring a policy of insurance. citing *Carlton v. St Paul Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1457, 36 Cal.Rptr.2d 229."). Only after the offer Ticketmaster/Live Nation presents and "highly recommends" is accepted by the consumer, as Smith did, is Ticketmaster/Live Nation authorized to then transmit the consumer's data and payment information to Defendants to complete the other transaction.

35.     Neither Ticketmaster nor Live Nation are licensed to act as insurance agents or insurance brokers in the State of California or any other state. Neither Ticketmaster nor Live Nation are licensed or authorized to transact insurance in the State of California or any other state. The license search function on the California Department of Insurance website indicates "no records found" when either Ticketmaster or Live Nation's name is input. *See* http://www.insurance.ca.gov/license-status.

36.     Insurance Code § 1631 provides: "Unless exempt by the provisions of this article, a person shall not solicit, negotiate, or effect contracts of insurance, or act in any of the capacities defined in Article 1 (commencing with Section 1621) unless the person holds a valid license from the commissioner authorizing the person to act in that capacity. The issuance of a certificate of authority to an insurer does not exempt an insurer from complying with this article. No exemption, or exception, or

1  other authorization exists to permit Ticketmaster/Live Nation to sell insurance or receive a commission,

2  referral fee, or kickback in relation to the sale or transaction of insurance.

3       37.    Insurance Code § 1633, provides in pertinent part: "Any person who transacts insurance

4  without a valid license so to act is guilty of a misdemeanor punishable by a fine not exceeding fifty

5  thousand dollars ($50,000) or by imprisonment in a county jail for a period not exceeding one year, or

6  by both that fine and imprisonment."

7       37.    Ticketmaster/Live Nation violated Insurance Code § 1631 and 1633 by receiving

8  commissions and referral fees while unlicensed. Ticketmaster/Live Nation is not licensed to act as an

9  insurance agent or insurance broker in the State of California. Ticketmaster/Live Nation engaged in

10  unlawful conduct.

11       38.    Despite not being licensed as an insurance agent in any state, Ticketmaster/Live Nation

12  receives, directly or indirectly, insurance premiums and referral fees from Defendants (splitting the

13  premiums Plaintiff and each class member are charged and pay) in relation to each Event Protection

14  Insurance policy sold to one of their ticket customers, including on Plaintiff's transactions.

15       39.    Ticketmaster/Live Nation was paid by Defendants (and indirectly by Plaintiff and each

16  class member) for each Event Protection Insurance policy sold, including Plaintiff's. The payments were

17  calculated as a percentage of each premium paid by the consumer and/or other factors as set forth in the

18  contract Defendants had with Ticketmaster/Live Nation.

19       40.    The Event Protection Insurance premiums were charged to Plaintiffs by

20  Ticketmaster/Live Nation in addition to the numerous itemized service, processing and administrative

21  fees Ticketmaster/Live Nation routinely charge when selling tickets to events. These charges already

22  more than fully compensate Ticketmaster/Live Nation for any goods or services it provides in the ticket

23  transaction. Any other revenues received would be duplicative, excessive, superfluous and unearned.

24       41.    Despite their superior knowledge, at no time did either Defendants and

25  Ticketmaster/Live Nation disclose the material fact to Plaintiff, other consumers in the Class or the

26  general public that (a) Ticketmaster/Live Nation was being compensated by Defendant by retaining,

27  receiving or otherwise being paid a pre-arranged portion of each premium collected on event protection

28

1   policies sold; (b) the commissions were being paid to Ticketmaster/Live Nation in addition to all the

2   other "service" fees charged.

3       42.     At no time did Plaintiff or any other customer agree or consent that Ticketmaster/Live

4   Nation could receive or retain any commission or referral fee in relation to the placement of the Event

5   Protection Insurance.

6       43.     Both Defendants and Ticketmaster/Live Nation had a duty to disclose the fact they were

7   secretly splitting payments from the Event Protection Insurance premiums Plaintiff and other insureds

8   who purchased event protection policies paid. First, Ticketmaster/Live Nation was acting as Plaintiffs'

9   agent or broker in procuring insurance when they received the fees. An agent has a duty to inform his/her

10   principal of material facts. Further compensation received by an agent or broker is property of the

11   principal and must be agreed to. Second, the information was exclusively within Defendants' and

12   Ticketmaster/Live Nation's control, and not readily available to Plaintiff and other ticket purchasers in

13   the Class by other means. Third, any statement of the policy's costs were a half-truth as they indicated

14   that the entire payment was going to Defendants, with no disclosure that a substantial portion (50-60%

15   +) of each premium was being split, rebated or otherwise paid to Ticketmaster/Live Nation for the

16   business referral. Plaintiff and other insureds who purchased event protection policies on

17   Ticketmaster/Live Nation's website suffered injury in fact as a result of the concealed payments to

18   Ticketmaster/Live Nation. Consumers who purchase tickets are generally angry at Ticketmaster/Live

19   Nation for the numerous service fees imposed when they purchase tickets (often exceeding 25 or 30%

20   of the total cost) and do not consent to further charges and fees.[4] While consumers generally disapprove

21   of Ticketmaster/Live Nation's conduct charging numerous service fees, they are between a rock and a

22

[4] *See generally* Kaitlyn Tiffany, *How ticket fees got so bad, and why they won't get any better*, VOX
23 (June 12, 2019, 1:30 PM EDT), https://www.vox.com/the-goods/2019/6/12/18662992/ticket-fees-
ticketmaster-stubhub-ftc-regulation ("According to a study published by the Government
24 Accountability Office in April 2018, the average ticket fee is now 27 percent of the ticket's face value,
with some fees as high as 37 percent. And Ticketmaster is regularly referred to as one of the most-hated
25 companies in America — it's the largest online ticket seller by far and has been under monopoly scrutiny
since its 2010 merger with Live Nation, the country's largest promotion and venue company….."); Steve
26 Knopper, *Everyone Hates Ticketmaster But Nobody Can Take It Down*, WIRED (Nov. 1, 2010, 12:00
PM), https://www.wired.com/2010/11/mf-ticketmaster/ ("Among fans and artists, of course,
27 Ticketmaster is widely despised. It extracts high service fees (known commonly as "those goddamned
Ticketmaster service fees") but has offered very little innovation in ticketing over the past 30 years….
28 Most obviously, it gouges ticket buyers.").

1   hard place in having to pay them as it is the only way to attend events by their favorite artists.

2   Ticketmaster/Live Nation exploit their monopoly power to extract these "mandatory" fees from

3   consumers. *See generally*, Vox, *supra*. Ticketmaster/Live Nation' ability to exploit consumers on fees

4   is heightened due to time restrictions Ticketmaster/Live Nation place on consumers to complete online

5   purchases whereby if the ticket transaction is not completed within a few short minutes (as indicated on

6   a running timer on the screen) they risk losing out on the best available tickets (or only available tickets)

7   in the process of being ordered. *Id.* Reasonable consumers, like Plaintiff and other member of the general

8   public who purchase tickets, would act differently regarding the purchase of additional Event Protection

9   Insurance if they knew that a significant portion of each premiums was being rebated or kicked back

10  from Defendants to Ticketmaster/Live Nation and therefore amounted to yet another fee paid by them

11  to Ticketmaster/Live Nation. Similarly, consumers would act differently if they did not have time

12  constraints to complete transactions and an ability to challenge the conduct upon full disclosure without

13  risk of losing coveted and scarce seats selected. For example, consumers would shop around for

14  alternative coverage at a lower cost. As a result of the concealment and transactional pressure, Plaintiff

15  and other members of the general public were denied the opportunity to consider that information when

16  making their purchasing decisions, and thus were injured.

17      44.    In selling tickets and Event Protection Insurance on their websites, Ticketmaster/Live

18  Nation engages in Drip Pricing and Digital Advertising Drip pricing, which is an advertising technique

19  wherein a company advertises only part of a product's price initially, and later reveals additional fees as

20  the consumer continues the purchasing process. Use of the drip pricing technique is unfair and deceptive,

21  as the consumer expects to pay a certain price for a product only to be surprised with additional

22  unexpected fees further down the transactional process. The objective of drip pricing is to gain a

23  consumer's interest in a misleadingly low headline price without the true final price being disclosed until

24  the consumer has invested time and effort in the purchase process and made a decision to purchase.

25  Through the use of drip pricing, Ticketmaster/Live Nation engages in deceptive marketing practices by

26  promoting the sale of tickets to the public at prices that are not in fact attainable and then supplying

27  tickets at prices above the advertised price. The same holds true for Ticketmaster/Live Nation' numerous

28

service fees, which are not all initially disclosed up front but instead only later revealed as the consumer continues the purchasing process. Drip pricing in the digital sphere can particularly encourage consumers to buy tickets because of pop-ups, countdown clocks, and the reveal of the higher price only after the interactive digital transaction has begun. While deceptive and unfair across all mediums, use of drip pricing is a particularly nefarious technique on digital platforms like Ticketmaster/Live Nation's where transactions are timed and must be completed rapidly or risk losing the specific seats to the event secured in the purchaser's "cart," and particularly with regard to the Event Protection Insurance and the related commissions, referral fees or rebates at issue because there is no disclosure by Ticketmaster/Live Nation or Defendants that part of each premium paid is yet another fee going to Ticketmaster/Live Nation. This is further enhanced by the "one time offer" nature of the Event Ticket Protection marketing, effectively foreclosing any type of price comparison or other consumer search behavior. Defendants are aware of the foregoing and attempt to exploit it to their advantage by entering into the contract with Ticketmaster/Live Nation to have Ticketmaster and Live Nation sell Event Protection Insurance policies Defendants issue as part of the mandatory check out process without disclosure of the premium split.

45.    As Plaintiff had already more than fully compensated Ticketmaster/Live Nation for any services provided through the numerous service fees already charged as part of the ticket transactions, Plaintiff would not have elected to pay Ticketmaster/Live Nation yet another fee in the form of a secret insurance commission, referral fee or kickback when purchasing Event Protection Insurance. The commission / referral fee payments that Defendant concealed were material to Plaintiff and other members of the general public as it is the type of information that tends to influence or at the very least is capable of leading a reasonable person to change his or her decisions. *See U.S v. Gross*, 370 F.Supp.3d 1139, 1147 (C.D. Cal. 2019) (undisclosed kickback was concealed material fact).

46.    As they are not licensed as insurance agents or brokers, Ticketmaster/Live Nation cannot receive any insurance commissions, referral fees or other compensation for selling insurance, including Event Protection Insurance. Insurance Code §§ 750, 754, 1631, 1633; Civil Code § 1608.

47.    The failure to have a license, while engaging in activities for which the license is required, is actionable as an unlawful, unfair, unconscionable and deceptive business practice.

Additionally, consumers reasonably expect that when transacting with a multinational corporation, the entity is licensed and otherwise authorized to conduct the business in question, and is therefore operating under the watchful eye of public regulators for the benefit of the general public.

48.    Insurance Code § 750 makes it unlawful for an unlicensed person to offer, pay or receive any commission or other compensation in relation to the sale of insurance in California. That section provides, in pertinent part: "Except as provided in Section 750.5, any person acting individually or through his or her employees or agents, who engages in the practice of processing, presenting, or negotiating claims, including claims under policies of insurance, and who offers, delivers, receives, or accepts any rebate, refund, commission, or other consideration, whether in the form of money or otherwise, as compensation or inducement to or from any person for the referral or procurement of clients, cases, patients, or customers, is guilty of a crime." Other states have similar prohibitions.

49.    Insurance Code § 754 further makes it unlawful for an unlicensed person to receive any commission or other compensation in relation to the sale of insurance in California. That section provides, in pertinent part: "It is unlawful for any person to solicit, receive, offer, or pay any referral fee for the referral of an individual for the furnishing of services or goods for which the person knows or should have known whole or partial reimbursement is or may be made, directly or indirectly, by any insurer. As used in this section, a referral fee is a fee paid by a person furnishing goods or services to another in return for the referral of an individual to that person for the furnishing of services or goods. It includes any referral fee, kickback, bribe, or rebate, whether made directly or indirectly, overtly or covertly, or in cash or in kind." Other states have similar prohibitions.

50.    In turn, Defendants could not lawfully pay and Ticketmaster/Live Nation could not lawfully accept any commission, referral fee and/or other amount in connection with the sale of any insurance policy.

51.    Defendants violated Insurance Code §750 and 754, among other laws, for paying commissions, referral fees and/or other compensation to unlicensed persons in relation to the sale of insurance.

1    52.    A contract which requires the performance of unlawful acts is unenforceable and void *ab*

2    *initio*. Civ. Code §§ 1608, 1667. Civil Code § 1608 provides: "EFFECT OF ITS ILLEGALITY. If any

3    part of a single consideration for one or more objects, or of several considerations for a single object, is

4    unlawful, the entire contract is void." *See also, Fewel & Dawes v. Pratt*, 17 Cal.2d 85 (1941)(contract

5    to pay commissions to unlicensed insurance agent is unlawful and void); *Losson v Blodgett*, 1 Cal. App.

6    2d 13 (App. 1934) ( Where the consideration for a contract is unlawful, the contract is void.); *Weber v.*

7    *Tonini*, 151 Cal. App. 2d 168, 171 (App. 1957).

8    53.    An illegal contract cannot be ratified nor can any person be estopped from asserting the

9    illegality of the transaction.

10    54.    Civil Code § 1689 provides: "A party to a contract may rescind the contract in the

11    following cases:

12    (1) If the consent of the party rescinding, or of any party jointly contracting with him,
was given by mistake, or obtained through duress, menace, fraud, or undue influence,
13    exercised by or with the connivance of the party as to whom he rescinds, or of any other
party to the contract jointly interested with such party.

14

15    (2) If the consideration for the obligation of the rescinding party fails, in whole or in
part, through the fault of the party as to whom he rescinds.

16    (3) If the consideration for the obligation of the rescinding party becomes entirely void
from any cause.
17

18    (4) If the consideration for the obligation of the rescinding party, before it is rendered
to him, fails in a material respect from any cause.

19    (5) If the contract is unlawful for causes which do not appear in its terms or conditions,
and the parties are not equally at fault.
20

21    (6) If the public interest will be prejudiced by permitting the contract to stand."

22    55.    Civil Code § 1692 provides:

23    When a contract has been rescinded in whole or in part, any party to the contract may
seek relief based upon such rescission by (a) bringing an action to recover any money
or thing owing to him by any other party to the contract as a consequence of such
24    rescission or for any other relief to which he may be entitled under the circumstances or
(b) asserting such rescission by way of defense or cross-complaint.
25

26    If in an action or proceeding a party seeks relief based upon rescission and the court
determines that the contract has not been rescinded, the court may grant any party to the
action any other relief to which he may be entitled under the circumstances.
27

28    A claim for damages is not inconsistent with a claim for relief based upon rescission.

21
COMPLAINT

> The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.
>
> If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties.

56.    Further, all such contracts for unlicensed services are also unconscionable and unenforceable. *See* Civ. Code. § 1670.5.

57.    Any contracts for payment of commissions, referral fees or other payments to unlicensed persons in relation to the sale of Event Protection Insurance are unlawful, unconscionable, contrary to public policy and void. This includes: (a) the contract between the consumer and Ticketmaster/Live Nation for the procurement of insurance; (b) the contract between Plaintiff and Defendants for Event Protection Insurance, and (c) the contract between Ticketmaster/Live Nation and Defendants whereby Defendants agree to have Ticketmaster/Live Nation retain or be paid indirectly through Defendants' insurance commissions based on the price of the ticket. As the insured party paying all premiums and receiving all services, Plaintiff and members of the Class were third-party beneficiaries of any such contract(s). Pursuant to Civil Code §1599, the legal aspects of such contracts can be severed from the illegal aspects. Refunds, restitution of damages equal to the commissions should be provided to Plaintiff and the Class. Civil Code §§ 1599, 1608, 1689, 1692.

58.    Any contract between Defendants and Ticketmaster/Live Nation required compliance with the law, including licensing laws, as a condition of payment. Implied and present in all contracts is the implied covenant of good faith and fair dealing. As set forth in the Restatement (Second) of Contracts, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). A party to a contract breaches these duties when his/her conduct frustrates the purpose of the contract, *e.g.*, by failing to perform the things necessary to carry out the purpose for which the contract was entered into and to refrain from destroying or injuring the other party's right to receive the fruits of the contract. At the very least, it was an implied term in all contracts at issue, that Ticketmaster/Live Nation in marketing, procuring, selling and/or otherwise transacting insurance (for which it was receiving commissions), was

licensed and had the legal status to legally do so. Acting without proper licensure amounted to an act of bad faith and breach. As Defendants and Ticketmaster/Live Nation exchanged commissions while Ticketmaster/Live Nation was unlicensed, when licensing is required by law, Defendants and Ticketmaster/Live Nation breached their contract (for which Plaintiff and the Class were third-party beneficiaries), including but not limited to the implied covenant of good faith and fair dealing. Additionally, Defendants breached their contracts with Plaintiffs and the Class as the majority of the premiums charged were for an unlawful commission to Ticketmaster/Live Nation, and thus lacked valid consideration.

59. Ticketmaster/Live Nation's receipt and retention of commissions, referral fees or other amounts in relation to the sale of Event Protection Insurance is unjust and overcompensates Ticketmaster/Live Nation as those sums exceeded the amounts Ticketmaster/Live Nation was legally authorized to be compensated for.

60. All funds paid to an agent are property of its principal.

61. All payments Defendants made to Ticketmaster/Live Nation in relation to the sale and placement of Event Protection Insurance belong to Plaintiff and the other consumers in the Class who paid the premiums in relation to their transactions.

62. If necessary, a constructive trust or other trust should be established to hold any further commission payments made.

63. Members of the general public, including Plaintiff, were also injured financially by Defendants' conduct of secretly accepting payments while not licensed as an insurance agent, and will continue to be injured in the future unless Defendants' conduct is enjoined and the contracts declared unlawful, unconscionable, contrary to public policy and void. Public injunctive and declaratory relief is necessary to stop ongoing, immediate, and future harm to the general public.

## V.    ALLEGATIONS REGARDING THE GENERAL PUBLIC

64. Plaintiff brings this action on his own behalf and on behalf of the general public pursuant to Business & Professions Code § 17200 *et seq.,* Business & Professions Code § 17500 *et seq.,* and other laws. Among other relief, Plaintiff seeks public injunctive relief.

65.     Public injunctive relief is available under the Unfair Competition Law (UCL), the Consumers Legal Remedies Act (CLRA), and the false advertising law and is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 960, 393 P.3d 85, 93 (2017).

66.     Cal. Bus. & Prof. Code § 17203 provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

67.     California law applies to the challenged conduct as Defendants transacted with Plaintiff and other Class members in California and Defendants paid unlawful fees to Ticketmaster/Live Nation in California.

68.     It is not necessary to seek class certification in order to obtain injunctive relief on behalf of the general public.

69.     Plaintiff's claims on behalf of herself and the general public for public injunctive and declaratory relief are proper and cannot be waived. In *McGill*, 2 Cal. 5th 945, the California Supreme Court ruled that any contract that waives the statutory remedy of public injunctive relief on behalf of the general public under the Unfair Competition Law is contrary to California public policy and thus unenforceable under California Law.

70.     The laws at issue in this dispute, including the licensing laws, were established for a public reason and cannot be contravened by private agreement.

71.     Public injunctive relief has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Private litigants, like Plaintiff can bring claims for public injunctive relief as a representative of members of the general public similarly affected by the unlawful acts at issue which threaten future injury.

24
COMPLAINT

72.    To the extent Defendants' contracts and/or Ticketmaster/Live Nation's Terms of Use attempt to prevent Plaintiff from seeking public injunctive relief, they are contrary to California public policy and unenforceable under California Law. Such claims, therefore, properly proceed. *McGill*, 2 Cal. 5th 945; Civil Code §3513.

73.    Public injunctive relief on behalf of all affected consumers throughout the United States who will purchase Event Protection Insurance in the future is appropriate. Defendants' conduct paying unlawful commissions to unlicensed entities in California should be enjoined. Any attempt to prevent claims on behalf of the general public seeking public injunctive relief are contrary to California public policy and thus, unenforceable under California Law.

74.    California law applies uniformly to all claims brought by Plaintiff on behalf of the general public in California and other states because Defendants' conduct, by and through their co-conspirator, Ticketmaster/Live Nation, was committed in California on each transaction. Ticketmaster/Live Nation with Defendants established the business policies at issue in and from Ticketmaster/Live Nation's offices in California and those policies affected transactions of members of the general public both in California and other states. Ticketmaster/Live Nation was paid, received and/or controlled the premiums, commissions referral fees, rebates and other sums at issue in and from its offices in California.

75.    The provisions of California law upon which Plaintiff bases these claims contain provisions that are broadly remedial in nature. These laws and standards serve an important public interest in establishing minimum due process and public protection from adhesion contracts.

76.    The nature of this action and the format of laws available to Plaintiff and members of the general public identified herein make this format a particularly efficient and appropriate procedure to redress the wrongs alleged herein. If each consumer were required to file an individual lawsuit, the corporate Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Plaintiff with their vastly superior financial and legal resources.

# VI.    CLASS CERTIFICATION IS APPROPRIATE

77.    Plaintiff's claims satisfy the requirements for class certification pursuant to Cal. Code Civ. P. § 382 *et seq.* and any other applicable rule of civil procedure, and class certification is appropriately granted.[5]

78.    The Class is defined as:

> All persons in the United States who during the Class Period purchased Event Protection Insurance, through Ticketmaster/Live Nation's websites, issued by Defendants in which any portion of the premium charged was provided to Ticketmaster, Live Nation or their agents, employees and assigns as a commission and/or referral fee.

(the "Class"). Within the Class is a California subclass defined as:

> All persons in the State of California who during the Class Period purchased Event Protection Insurance, through Ticketmaster/Live Nation's websites, issued by Defendants in which any portion of the premium charged was provided to Ticketmaster, Live Nation or their agents, employees and assigns as a commission and/or referral fee.

("California subclass")

The Class Period dates back to the start of the longest applicable statute of limitations for any claim asserted from the date this action was commenced and continues through the present and the date of judgment. ("Class Period")  Excluded from the Class or any subclass are: (a) any officers, directors or employees of Defendants, Ticketmaster and/or Live Nation; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) the undersigned counsel and all employees of their law firms; (d) any employee of the Court; and, (e) any juror selected to hear this case.

79.    **Numerosity:** Individual joinder of class members is impracticable and unfeasible. Upon information and belief, the number of Event Protection Insurance transactions that Defendant engaged in the state of California alone over the past 4 years involving commissions to Ticketmaster/Live Nation, exceeds 10,000.

80.    The Class is defined in objective terms. The members of the Class is ascertainable and able to be identified as Defendants maintain records of the Event Protection Insurance Policies sold, commissions paid and the contact information of each purchaser in the Class. Third parties Ticketmaster

---

[5]    Plaintiff reserves the right to amend this complaint in the future to include additional class allegations, if discovery and further investigation reveals such action is warranted.

and Live Nation also possess this information, upon information and belief. Alternatively, class members can self-identify themselves at the appropriate stage.

81.  **Commonality/Predominance/Community of Interest:** There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in this action. Common questions of law and fact exist as to all members of the general public, and predominate over any questions which may affect only individuals. The common question of whether the commissions were unlawful, the contracts for such fees void, and whether restitution and injunctive relief is appropriate, is common and predominates in each individual's claim. Resolution of that question in Plaintiff's transaction, applying common evidence, witnesses and law, will similarly resolve it for other members of the Class.

82.  Questions of law and fact at issue in this action will generate common answers apt to drive the resolution of this litigation, including, but not limited to, the following:

a.  Whether the payments from Defendants to Ticketmaster/Live Nation are unlawful commissions, rebates, kickbacks and/or referral fees;

b.  Whether Defendants violated the Insurance Code;

c.  Whether the failure to disclose the fact that commissions, referral fees or other amounts were being split with or paid by Defendants to Ticketmaster/Live Nation, while unlicensed and unauthorized to receive such amounts, concealed material facts from consumers;

d.  Whether Plaintiff and other consumers were injured and overcharged when they paid premiums that contained prohibited components, namely the commissions split with, or otherwise paid to, Ticketmaster/Live Nation;

e.  Whether the concealment of the kickback scheme is material to a reasonable consumer, applying the applicable objective test;

f.  Whether the contracts related to the commissions are unlawful and void;

g.  Whether public injunctive and/or declaratory relief is appropriate;

   h.  Whether Defendants have been unjustly enriched by paying unlicensed entities to drive more insurance sales to it from captive customers, and

   i.  Whether Defendants' conduct as alleged herein violated the California Unfair Competition Law and other laws referenced herein.

83.  No violations alleged in this complaint are contingent on any individualized interaction of any kind between members of the Class and the Defendants.

84.  At all relevant times, Plaintiff purchased tickets to entertainment events through Ticketmaster/Live Nation' websites, along with Event Ticket Insurance issued by Defendants for which she was charged an additional premium. The premium charged was paid in addition to the ticket price and the numerous other service fees charged by Ticketmaster/Live Nation for its services issuing the tickets. Without Plaintiff's knowledge and consent, part of the premium charged was paid by Defendants to Ticketmaster/Live Nation as an unlawful commission rendering any contract related to the commission payment void and subject to restitution. Civil Code §1599, 1608, 1689, 1692. Plaintiff paid the premium demanded and was injured as the majority of the charge was to fund an unlawful commission. Had all material facts regarding the unlawful commission been disclosed, Plaintiff would have acted differently and not parted with her funds.

85.  For instance, on June 7, 2016 Plaintiff purchased tickets to the October 31, 2016 concert of bands Five Finger Death and Shinedown at the SAP Center in San Jose, California paying $13.98 for the Event Protection Insurance, in addition to the ticket price and service fees. (Ticketmaster Order # 25-122686/NCA; Allianz Policy No. EUSP3058501708.). Defendants unlawfully and secretly split the premium Plaintiff paid with Ticketmaster/Live Nation, who were unlicensed, rendering the transaction unlawful and any contract related to such payment void. Plaintiff was injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), she would have acted differently and either not bought the insurance, retaining her money; attempted to pay a lesser premium amount that excluded the amount of the unlawful commission; sought similar insurance coverage from a lower priced provider, and/or taken other alternative action.

86.     On March 9, 2017 Plaintiff purchased tickets to the June 5, 2017 Seether concert at the Fillmore in San Francisco, California paying $13.98 for the Event Protection Insurance, in addition to the ticket price and service fees. (Live Nation Order # 16-43687/NCA; Allianz Policy No. EUSP3065179244.). Plaintiff was injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), she would have acted differently and either not bought the insurance, retaining her money; attempted to pay a lesser premium amount that excluded the amount of the unlawful commission; sought similar insurance coverage from a lower priced provider, and/or taken other alternative action.

87.     On March 14, 2017 Plaintiff purchased tickets to the July 31, 2017 Avenged Sevenfold concert at Golden 1 Center in Sacramento California paying $15.98 for the Event Protection Insurance, in addition to the ticket price and service fees. (Ticketmaster Verified Tickets Order # 50-47102/NCA; Allianz Policy No. EUSP3065341316.). Plaintiff was injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), she would have acted differently and either not bought the insurance, retaining her money; attempted to pay a lesser premium amount that excluded the amount of the unlawful commission; sought similar insurance coverage from a lower priced provider, and/or taken other alternative action.

88.     On June 26, 2017 Plaintiff purchased tickets to the December 2, 2017 Foo Fighters concert at Golden 1 Center in Sacramento California paying $15.98 for the Event Protection Insurance, in addition to the ticket price and service fees. (Order #81-25578/NCA; Allianz Policy No. EUSP3068423810.). Plaintiff was injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), she would have acted differently and either not bought the insurance, retaining her money; attempted to pay a lesser premium amount that excluded the amount of the unlawful commission; sought similar insurance coverage from a lower priced provider, and/or taken other alternative action.

89.    On March 12, 2019 Plaintiff purchased tickets to the August 7, 2019 Bush and Live concert at the Concord Pavilion in Concord, California paying $20.88 for the Event Protection Insurance, in addition to the ticket price and service fees. (Live Nation Order # 3-40106/NCA; Allianz Policy No. EUSP3092537448.)  Plaintiff was injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), she would have acted differently and either not bought the insurance, retaining her money; attempted to pay a lesser premium amount that excluded the amount of the unlawful commission; sought similar insurance coverage from a lower priced provider, and/or taken other alternative action.

90.    In addition to Plaintiff, numerous other persons within the general public obtained Event Protection Insurance through Ticketmaster/Live Nation when purchasing tickets, paying the premiums demanded in addition to any of Ticketmaster/Live Nation' numerous service fees. Consumers were injured, overpaid and otherwise suffered out-of-pocket loss by Defendants' conduct as had the material facts been disclosed about the commission being unlawfully paid to an unlicensed entity (Ticketmaster/Live Nation), reasonable consumers would have acted differently and either not bought the insurance, retaining their money; attempted to pay a lesser premium amount that excluded the unlawful commission; sought similar insurance coverage from a lower priced provider and/or taken other alternative action. Even if Defendants had been legally permitted to pay, and Ticketmaster/Live Nation legally permitted to receive, such commissions, kickbacks, and/or fees, Defendants were obliged to disclose the existence of this scheme as such information – that the bulk of the cost for insurance comprised of a payment to Ticketmaster/Live Nation, which was already receiving numerous service fees in the overall ticket transaction completed at check-out, fully compensating them – is material to a reasonable consumer and would have led to different purchase behavior if disclosed.

91.    **Typicality:** Plaintiff has a claim that is typical and representative of other persons who obtained Event Protection Insurance from Defendant through Ticketmaster/Live Nation. All claims are based on the exact same legal theories. Plaintiff was and is a victim of the policies, practices, and customs of Defendants complained of in this action in ways that have deprived her of the rights

1  guaranteed by California Bus. & Prof. Code 17200 *et. seq.*, and other applicable law. As such, and based
2  upon all the facts and circumstances incident to Defendants' business in California, Defendants are
3  subject to California Bus. & Prof. Code 17200 *et. seq.*, and other applicable law. As a pattern and
4  practice and matter of policy and common practice, in violation of the laws, Defendants committed
5  unlawful, unfair, deceptive and unconscionable practices based on the claims alleged in the preceding
6  paragraphs.

7      92.    Like all persons in the general public who obtained Event Protection Insurance from
8  Defendants, Plaintiff entered into standard form agreements with Ticketmaster/Live Nation, as well as
9  Defendants, through Ticketmaster/Live Nation automated websites. Plaintiff's transactions with
10  Defendants were not unique, but instead were reflective of common business practices and systems.

11      93.    **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests
12  of the Class who obtained Event Protection Insurance from Defendants. Plaintiff has no interests that
13  are adverse to, or in conflict with, other persons in the Class who obtained Event Protection Insurance.
14  Plaintiff's request for injunctive relief will benefit the Class and general public. Plaintiff has retained
15  counsel, designated below, who are experienced in representative and complex litigation and who have
16  sufficient resources and skill to prosecute this action vigorously on behalf of other persons in the general
17  public who are threatened by the practices challenged herein.

18      94.    **Predominance of Common Issues:** A single class proceeding is more efficient for all
19  parties and the court. Proof of a common business practice or factual pattern, which the named Plaintiff
20  experienced and is representative of, will establish the rights of each consumer in the Class to monetary,
21  injunctive and declaratory relief on the causes of action alleged herein.

22      95.    **Superiority:** A single class proceeding is superior to the individual litigation of a
23  multitude of cases by members of the Class. This action is superior to other methods for the fair and
24  efficient adjudication of the controversy. Resolution of common questions on behalf of the general
25  public is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions,
26  presents fewer management difficulties, conserves judicial resources and the parties' resources, and
27  protects the rights of each person in the general public who obtained Event Protection Insurance.

28

96.     Absent a class action, individual consumers would find the cost of litigating their claims prohibitively high and would have no effective remedy for monetary relief.

97.     In addition, Defendants have acted or refused to act on grounds that apply generally to the Class, thereby making monetary, injunctive, equitable, declaratory, or a combination of such relief appropriate. As Defendants continue to split premiums for Event Protection Insurance with unlicensed entities the risk of future harm to Plaintiff, the Class and the general public remains making injunctive relief appropriate.

98.     The prosecution of separate actions by all affected individuals with contracts similar to Plaintiff's, even if possible, would create a substantial risk of (a) inconsistent or varying adjudications with respect to individual consumers, which would establish potentially incompatible standards of conduct for Defendants, and/or (b) adjudications with respect to individual consumers which would, as a practical matter, be dispositive of the interests of the other consumers not parties to the adjudications, or which would substantially impair or impede the ability to protect the interests of the Class. Further, the claims of individual consumers are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses.

### FIRST CAUSE OF ACTION
#### Void Contract/Rescission/Restitution

99.     Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

100.     Plaintiff brings this claim individually, on behalf of the Class and on behalf of the general public throughout the United States against Defendants.

101.     Pursuant to Ins. Code §1631 and 1633 entities such as Ticketmaster and Live Nation cannot solicit, negotiate, effect or transact insurance without license, including on behalf of insurance companies such as Defendants.

102.     Pursuant to Ins. Code §§ 750 and 754 it is unlawful for unlicensed persons/entities such as Ticketmaster and Live Nation to receive any commission, referral fee or other payment if unlicensed

1    to transact insurance, and for Defendants to offer, deliver or otherwise pay any such amounts to

2    unlicensed persons/entities.

3          103.    Pursuant to Civ. Code 1608 "[i]f any part of a single consideration for one or more

4    objects, or of several considerations for a single object, is unlawful, the entire contract is void."

5          104.    Pursuant to Civ. Code § 1689(b)(3), (5), and (6) a contract is properly rescinded if void,

6    unlawful or contrary to public interest.

7          105.    Pursuant to Civil Code §1692 where a contract is rescinded, "the aggrieved party shall

8    be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the

9    transaction and any consequential damages to which he is entitled."

10         106.    In addition, under Civ. Code §1670 "[i]f the court as a matter of law finds the contract or

11    any clause of the contract to have been unconscionable at the time it was made the court may refuse to

12    enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause,

13    or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

14         107.    Under Civ. Code §1599 "where a contract has several distinct objects, of which one at

15    least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and

16    valid as to the rest."

17         108.    Each ticket transaction in which Event Protection Insurance is purchased by a consumer

18    like Plaintiff involves at least three contracts: (a) the contract between the consumer and

19    Ticketmaster/Live Nation for the event tickets and related "services" for which Ticketmaster/Live

20    Nation receives specific fees and commissions, including for the procurement of Event Protection

21    Insurance, all of which are ultimately paid by the consumer, directly or indirectly; (b) the contract

22    between the consumer and Defendants for event protection insurance coverage (*i.e.*, the policy); (c) the

23    contract between Ticketmaster/Live Nation and Defendants whereby Defendants agree to have

24    Ticketmaster/Live Nation retain or be paid indirectly through Defendants insurance commissions based

25    on the price of the ticket.

26         109.    This count primarily involves the last two contracts referenced in the aforementioned

27    paragraph. Each contract related to the payments of unlawful consideration should be declared void *ab*

28

*initio* and rescinded. Charging, receiving and/or paying unlawful consideration to an unlicensed entity for the referral of business breaches the contracts and any implied covenant of good faith and fair dealing that is part of all contracts, as well as public policy.

110.    Plaintiff and the members of the Class performed and satisfied any obligations they were required to under the contracts.

111.    The implied covenant of good faith and fair dealing is part of every contract.

112.    Any contract between consumers like Plaintiff and Defendants for event protection insurance coverage (*i.e.*, the policy) includes payment as a component of the total premium charged Plaintiff and class members for unlawful, undisclosed commissions that were paid to Ticketmaster/Live Nation. That aspect of the contract(s) should be declared void, rescinded and restitution, disgorgement and/or damages equal to the unlawful, undisclosed commission provided to Plaintiff and the Class, and the practice enjoined.

113.    At no time did either Ticketmaster/Live Nation or Defendants disclose the material fact to Plaintiff or other customer that Ticketmaster/Live Nation were being compensated by Defendants by retaining, receiving or otherwise being paid a pre-arranged portion of each premium collected on event protection policies sold Plaintiffs, Class members and other members of the general public. At no time did Plaintiff or other members of the general public ever consent to the payment of commissions or referral fees to unlicensed entities in violation of applicable law in relation to their Event Protection Insurance transactions. Like other reasonable consumers, Plaintiff would not have agreed to an illegal payment. Even if Defendants had been legally permitted to pay, and Ticketmaster/Live Nation legally permitted to receive, such commissions, kickbacks, and/or fees, Defendants were obliged to disclose the existence of this scheme as such information – that the bulk of the cost for insurance comprised of a payment to Ticketmaster/Live Nation, after already receiving numerous service fees in the overall ticket transaction completed at check out on the websites, fully compensating them, – is material to a reasonable consumer and would have led to different purchase behavior if disclosed.

114.    As the insured party, Plaintiff, was a third-party beneficiary of any contract(s) between Defendants and Ticketmaster/Live Nation for payment of insurance commissions, referral fees or other

1   amounts, in relation to the provision of Event Protection Insurance, purchased by Plaintiff. Similarly,

2   other members of the general public were third party beneficiaries of any contract(s) between Defendant

3   and Ticketmaster/Live Nation for payment of insurance commissions, referral fees or other amounts, in

4   relation to the provision of Event Protection Insurance purchased. While the details of the contract

5   between Defendants and Ticketmaster/Live Nation are not disclosed, Plaintiff and other consumers

6   purchasing Event Protection Insurance are third-party beneficiaries of the contract as licensing laws are

7   for the protection of insurance purchasers and entities transacting insurance must be licensed to lawfully

8   receive commissions. Proper licensure was an express or implied term and condition of any commission

9   payment. Any payment of commissions to unlicensed persons/entities (as Ticketmaster and Live Nation

10  are) breaches any contract, applicable law and public policy. Further, like other members of the Class

11  and general public who engaged in similar transactions to purchase Event Protection Insurance, Plaintiff

12  was the intended third-party beneficiary of any contract for payment of commissions because, *inter alia*,

13  any work claimed to have performed by Ticketmaster/Live Nation in relation to the policies and

14  commissions paid, was for Plaintiff's benefit.

15      115.    At no time has either Ticketmaster or Live Nation been licensed as an insurance agent or

16  broker in California or any other state, and no exceptions, exemptions, or other authorization exists to

17  permit the described conduct. Both the receipt of commissions by Ticketmaster/Live Nation and the

18  payment of commissions to Ticketmaster/Live Nation by Defendants was unlawful and unconscionable

19  conduct, contrary to public policy. Such conduct also violates the implied covenant of good faith and

20  fair dealing is part of every contract.

21      116.    Restitution, refunds, disgorgement and/or damages in equal amount should be provided

22  to Plaintiff and the Class as they unknowingly and innocently ultimately funded the unlawful and

23  prohibited payments through the premiums they paid.

24      117.    To the extent necessary, the Court can sever the unlawful aspects of the transactions,

25  including those related to the payment of receipt of commissions, and declare them void *ab initio*.

26      118.    Defendants continue to engage in the conduct complained of and threaten members of

27  the Class and the general public with future harm unless enjoined.

28

119.    Based on the foregoing, in addition to damages and restitution, the Court should use its equitable powers to grant public injunctive relief and enjoin Defendants' ongoing unlawful practices to prevent future harm to the public. The Court should place the parties back in the position that they were before those contracts were executed, and grant all other relief as may be just and equitable under the circumstances, including reasonable attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5, *inter alia.* Going forward, any new amounts collected as premiums should be ordered to be placed in a constructive trust for the benefit of Plaintiff, the Class and other members of the general public who paid the premiums until this dispute is resolved with no portion disbursed to Ticketmaster/Live Nation.

**SECOND CAUSE OF ACTION**
**For Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

120.    Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

121.    Plaintiff brings this claim individually and on behalf of the Class and the general public throughout the United States against Defendants.

122.    California Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Defendants violated (and continue to violate) California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*, by engaging in the above-described unlawful, unfair, unconscionable, fraudulent, deceptive, untrue, and misleading acts and practices.

123.    Defendants' conduct was unlawful. As described above, Defendant secretly paid Ticketmaster/Live Nation commissions, referral fees or other amounts in relation to each Event Protection Insurance transaction by Plaintiff and members of the Class and general public.

124.    It is unlawful to pay an unlicensed person/entity any commission, rebate or referral fee for selling or transacting insurance. Insurance Code §§ 750, 754, 1631, 1633. Contracts related to such payments are void. Cal. Civil Code §1608.

125.    Defendants' conduct was fraudulent, deceptive and misleading by way of its material omissions of fact.

126.    "[T]he term 'fraudulent' as used in the section does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived. No proof of direct harm from a defendant's unfair business practice need be shown, such that [a]llegations of actual deception, reasonable reliance, and damage are unnecessary." *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332, 74 Cal.Rptr.2d 55 (1998) (internal citations and quotation omitted).

127.    Defendants' business practices detailed herein are fraudulent. In order to drive more business to them and sell more policies, Defendants agreed to secretly rebate the majority of the premiums charged for Event Protection Insurance to Ticketmaster/Live Nation despite them being unlicensed to transact insurance and unable to legally accept such payments. Defendants' conduct failing to disclose these material facts to Plaintiff and Class members was misleading and deceptive, and caused Plaintiff and members of the general public to enter into transactions that but for such conduct, they would not have entered.

128.    Defendants knew, or by the exercise of reasonable care should have known, that the statements and/or material omissions they made were deceptive and misleading to reasonable consumers. These partial disclosures regarding the premium charged (while omitting that the majority was rebated to Ticketmaster/Live Nation as a commission despite laws prohibiting the payment of commissions to unlicensed entities), gave rise to a duty disclose. Defendants' failure to disclose such material information constitutes fraudulent conduct in violation of the UCL. Even if Defendants had been legally permitted to pay, and Ticketmaster/Live Nation legally permitted to receive, such commissions, kickbacks, and/or fees, Defendants were obliged to disclose the existence of this scheme as such information – that the bulk of the cost for insurance comprised of a payment to Ticketmaster/Live Nation, after already receiving numerous service fees in the overall ticket transaction completed at check out on the websites, fully compensating them, – is material to a reasonable consumer and would have led to different purchase behavior if disclosed.

129.    The fraudulent business practices set forth have caused Plaintiff to suffer an injury in fact, and continue to threaten to injure Plaintiff and the general public, by causing a loss of money paid. Plaintiff paid money on the Event Protection Insurance policies described above, and is at risk of further

payments due to Defendants' ongoing and continuing conduct paying commissions to unlicensed persons / entities as Plaintiff intends to buy tickets to events in the future, which will need to be conducted on Ticketmaster/Live Nation' websites due to their dominant market position.

130.    Defendants had a duty to disclose material facts to Plaintiff and other persons in the general public from which it was dealing Event Protection Insurance. At no time, however, did either Ticketmaster/Live Nation or Defendants disclose the material fact to Plaintiff or other customer that (a) Ticketmaster/Live Nation was not licensed as an insurance agent or broker; (b) Ticketmaster/Live Nation was being compensated by Defendants by retaining, receiving or otherwise being paid a pre-arranged portion of each premium collected on event protection policies sold Plaintiffs and other members of the Class and general public. Rather, such facts were concealed by Defendants and Ticketmaster/Live Nation.

131.    Defendants had a duty and obligation to ensure Ticketmaster and Live Nation complied with all licensing requirements for transacting insurance before allowing them to receive and retain commissions on Event Protection Insurance sales like Plaintiff's.

132.    Defendants were in a position of superior knowledge with regard to the concealed information and Plaintiff could not learn of the commission payments through other reasonable and practical means. The ticket and insurance electronic transactions at issue are rushed transactions with very short time constraints whereby Plaintiff cannot stop and investigate further, without losing access to the particular and scarce tickets being purchased and held in the buyer's "cart" at that time for a limited time period (usually less than 10 minutes). This feature on Ticketmaster/Live Nation' website, which Defendants were aware of and endorsed, made clear, conspicuous and immediate disclosure by Defendants and Ticketmaster/Live Nation necessary. Any disclosure of the final premium, without further disclosure of Ticketmaster/Live Nation' unlicensed status and fact it was actually receiving a significant portion of each premium as a commission, referral fee or kickback was a half-truth, obligating both Defendants and Ticketmaster/Live Nation to make full and complete disclosure.

133.    The omitted and concealed facts were material to reasonable consumers like Plaintiff.

134.   Plaintiff, like other members of the general public dealing with Ticketmaster/Live Nation and Defendants, was injured and suffered out-of-pocket loss as a result of Defendants' conduct complained of herein. Plaintiff would have acted differently and would not have completed the Event Protection Insurance transaction (retaining her money), after already paying Ticketmaster/Live Nation significant service, administrative, processing and other fees that more than fully compensated it for any and all work performed in relation to the transaction, had she been made aware that the majority of the insurance premiums charged were really targeted for Ticketmaster/Live Nation in the form of a commission, rebate or referral fee. Plaintiff did not intend to or otherwise consent to pay another fee to Ticketmaster/Live Nation for purported services having already fully compensated Ticketmaster/Live Nation for any services through other itemized "service" fees that most reasonable ticket purchasers already consider excessive. *See e.g.* Vox, *supra*; Wired, *supra*. ("Most obviously, it gouges ticket buyers.") The failure to disclosure such facts were material to Plaintiff. But for Defendants' concealment of material facts, Plaintiff would still have the money she parted with for the Event Protection Insurance policies. Plaintiff, therefore, overpaid and was injured.

135.   Plaintiff was also injured, suffered out of pocket loss as she overpaid. First, lower priced providers of event protection coverage were bypassed due to Defendants' arrangement with Ticketmaster/Live Nation to secretly provide or rebate the majority of the premium and "highly recommend" only Defendants' Event Protection Insurance. Second, Defendant could and should have charged Plaintiff a premium that excluded the unlawful commission/rebate. Had Defendant done that, Plaintiff would have paid less and not incurred the out-of-pocket loss.

136.   Plaintiff is a regular purchaser of tickets to entertainment events through Ticketmaster/Live Nation' websites and like other members of the general public intends to continue purchasing tickets to entertainment events in the future. Ticketmaster/Live Nation holds monopoly power over the tickets they sell to events.[6] As a practical matter, Plaintiff and other consumers cannot

---

[6] *See generally* Brent Kendall & Anne Steele, *Justice Department Preparing Legal Action Against Live Nation for Ticketing Practices, Live Nation allegedly sought to strong-arm concert venues into using its dominant Ticketmaster subsidiary*, WALL STREET JOURNAL (Dec. 13, 2019, 5:44 PM ET), https://www.wsj.com/articles/justice-department-preparing-legal-action-against-live-nation-for-ticketing-tactics-11576266778.

therefore, purchase tickets to those same entertainment events she wishes to attend, at retail prices, through other ticket companies or competitors of Ticketmaster/Live Nation. Defendants' and Ticketmaster/Live Nation's conduct complained of herein, exchanging unlawful commissions, pursuant to an exclusive arrangement, is ongoing and continuing. The Court therefore should enjoin Defendants' conduct paying any commissions, referral fees or other amounts to unlicensed entities in relation to Event Protection Insurance sales. Absent the injunction requested, Plaintiff and others in the general public will be subject to future harm and financial injury from Defendants' ongoing unlawful conduct on future transactions she intends to complete.

137. Ticketmaster/Live Nation's business practices were unfair to Plaintiff and other consumers in the Class and general public who purchased Event Protection Insurance.

138. An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 839 [51 Cal.Rptr.3d 118, 129] (2006), *as modified* (Nov. 8, 2006).

139. Defendants' business practices detailed herein are unfair. The sale of insurance by unlicensed sales agents for secret commissions is unfair and unconscionable, especially when conducted in timed and rushed transactions where consumers are not provided all material facts. Consumers like Plaintiff are substantially injured by Defendants' conduct. In entering into unconscionable contracts, Plaintiff and members of the general public have paid copious amounts of money to Defendants. Plaintiff and the general public have little recourse after entering these contracts due to the unconscionable provisions contained therein. Upon information and belief, Defendants' intent in creating, marketing, and enforcing these contracts is to maximize financial gain at the expense of Plaintiff, the Class and the general public. Defendants' seek to lessen competition and have Ticketmaster/Live Nation, the dominant ticket seller in the nation steer customers' Event Protection Insurance business solely to Defendants by promising to pay/rebate the majority of each premium to Ticketmaster/Live Nation as an unlawful commission. But for the arrangement between Defendants and Ticketmaster/Live Nation to pay the majority of each premium paid by consumers as an unlawful commission and exclusively

recommend Defendants' insurance, Ticketmaster/Live Nation could recommend an alternative insurer to its customers, including those with lower rates. Any potential benefit to competition from Defendants' business practices is eclipsed by the harm suffered by Plaintiff, the Class, members of the general public and competitors.

140.   The unfair business practices set forth herein have caused Plaintiff to suffer an injury in fact, and continue to threaten to injure Plaintiff and the general public by causing a loss of money paid to Defendants.

141.   These violations have unjustly enriched Defendants at the expense of Plaintiff, the Class and the general public.

142.   Defendants continue to engage in the conduct complained of and threaten members of the general public with future harm unless enjoined.

143.   As a result, Plaintiff, the Class and the general public are entitled to injunctive and declaratory relief requiring Defendants to immediately cease the unfair, unlawful, and fraudulent business practices alleged herein. Specifically, Plaintiff, the Class and members of the general public are entitled to, at a minimum, public injunctive relief preventing Defendants from continuing such conduct in the future and issuing corrective statements; declaratory relief in the form of an order declaring void any contracts relating to Event Protection Insurance; and reasonable attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5, *inter alia*. In addition, restitution, refunds and disgorgement of ill-gotten gains should be provided to Plaintiff and the Class as they unknowingly and innocently ultimately funded the unlawful and prohibited commission payments through the premiums they paid. Going forward, any new amounts collected as premiums should be ordered to be placed in a constructive trust for the benefit of Plaintiff, the Class and other members of the general public who paid the premiums until this dispute is resolved with no portion disbursed to Ticketmaster/Live Nation.

**THIRD CAUSE OF ACTION**
**Money Had and Received / Assumpsit / Unjust Enrichment**

144.   Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

145.    Plaintiff brings this claim individually and on behalf of the Class and the general public throughout the United States against Ticketmaster/Live Nation.

146.    The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain. The law implies the promise from the receipt of the money to prevent unjust enrichment. The measure of the liability is the amount received.

147.    An action for money had and received derives from the common law action of assumpsit. The action allows recovery of money which a defendant erroneously receives in circumstances where it would be unjust for the defendant to retain the money. While this is a legal action, it draws upon the equitable principle that no one ought to be unjustly enriched at the expense of another.  A claim for money had and received may be based upon any set of facts which show that an injustice would occur if money were not refunded including but not limited to: (1) where consideration fails; (2) money is paid by mistake; or (3) where one party takes undue advantage of the other's situation.

148.    By way of the foregoing described conduct, Ticketmaster/Live Nation has been unjustly enriched by collection and retention of sums which in equity and good conscience it cannot be allowed to retain. Valid consideration fails as the majority of the premiums paid funded an unlawful commission to an unlicensed entity. Plaintiff was not advised that premiums paid funded an unlawful commission to an unlicensed entity, and thus was paid by mistake. In exchanging unlawful payments, Defendants and Ticketmaster/Live Nation took advantage of Plaintiff's and Class members' situation not knowing that the premiums they paid funded unlawful commissions to an unlicensed entity.

149.    Plaintiff and members of the Class paid money to Defendants as premiums, which unbeknownst to them included an unlawful component. But for the unlawful component of the charge, the premium would have been less. If the amount of the unlawful commissions were paid or forwarded to anyone after being paid to Defendants by Plaintiff and the Class, justly and equitably those sums should only go back to Plaintiff and the Class to prevent both Defendants' and Ticketmaster/Live Nation's unjust enrichment.

150.    Defendants incentivized Ticketmaster/Live Nation to direct consumer's insurance business to Defendants and bypass competitors through the promise to pay the majority of the premium back to Ticketmaster/Live Nation as an unlawful commissions.

151.    Pursuant to Plaintiff and each other Event Protection Insurance transactions, Ticketmaster/Live Nation acted as the ticket purchaser's insurance broker or agent for the procurement of insurance. At all times, however, Ticketmaster/Live Nation was unlicensed as an insurance broker or agent and thus, unable to lawfully collect and retain any commission, referral fee or other amounts in relation to the sale. Even if Defendants had been legally permitted to pay, and Ticketmaster/Live Nation legally permitted to receive, such commissions, kickbacks, and/or fees, Defendants were obliged to disclose the existence of this scheme as such information – that the bulk of the cost for insurance comprised of a payment to Ticketmaster/Live Nation, after already receiving numerous service fees in the overall ticket transaction completed at check out on the websites, fully compensating them, – is material to a reasonable consumer and would have led to different purchase behavior if disclosed.

152.    Defendants continue to engage in the conduct complained of and threaten members of the Class and general public with future harm unless enjoined.

153.    These violations have unjustly enriched Defendants at the expense of Plaintiff, the Class and the general public. Defendants should be ordered to refund and disgorge the funds Plaintiff and the Class paid them in relation to Event Protection Insurance sales in an amount no less than the unlawful commissions. To the extent sums paid as commissions should be clawed-back from Ticketmaster/Live Nation because they were unlicensed, Defendants are in a position to accomplish that because the sums should have never been paid. Going forward, any new amounts collected should be ordered to be placed in a constructive trust for the benefit of Plaintiff, the Class and other members of the general public who paid the premiums until this dispute is resolved and disbursement ordered by the Court.

154.    In addition, Plaintiff, the Class and the general public are entitled to injunctive and declaratory relief requiring Defendants to immediately cease the unfair, unlawful, and fraudulent business practices alleged herein. Specifically, Plaintiff and members of the general public are entitled to, at a minimum, public injunctive relief preventing Defendants from continuing such conduct in the

43

COMPLAINT

future and issuing corrective statements; declaratory relief in the form of an order declaring void any contracts relating to Event Protection Insurance; returning the parties to place they were prior to the transaction; and reasonable attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5, *inter alia*.

## FOURTH CAUSE OF ACTION
### Constructive Trust

155.    Plaintiff incorporates all preceding and succeeding allegations by reference as if fully set forth herein.

156.    Plaintiff brings this claim individually and on behalf of the Class and the general public throughout the United States against Ticketmaster/Live Nation.

157.    Being unlicensed as insurance agents (or brokers), Ticketmaster/Live Nation cannot not lawfully collect and retain any commissions, referral fees or other amounts in relation to the sale and placement of Event Protection Insurance. Even if Defendants had been legally permitted to pay, and Ticketmaster/Live Nation legally permitted to receive, such commissions, kickbacks, and/or fees, Defendants were obliged to disclose the existence of this scheme as such information – that the bulk of the cost for insurance comprised of a payment to Ticketmaster/Live Nation, after already receiving numerous service fees in the overall ticket transaction completed at check out on the websites, fully compensating them, – is material to a reasonable consumer and would have led to different purchase behavior if disclosed.

158.    This Complaint serves as notice to Defendants of their unlawful, deceptive and unfair conduct. Further payment of insurance commissions, referral fees and/or other amounts to Ticketmaster/Live Nation from premiums paid should immediately cease. To the extent Defendants defy Plaintiff's demand to cease and desist, the Court should order the establishment of a constructive trust.

159.    A constructive trust or other trust should be established to hold all additional premiums collected in relation to the sale and placement of Event Protection Insurance with disbursement and management to be as directed by court in its discretion and equitable powers.

160.    Among other relief, Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5, *inter alia*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class and the general public throughout the United States, requests relief as follows on all counts:

A.    Certification of the Class, appointing Plaintiff as the class representative and the undersigned as class counsel;

B.    Damages in an amount to be proven at trial (except on Count II);

C.    Restitution in an amount to be determined at trial;

D.    Disgorgement;

E.    Establishment of a constructive trust to hold all premiums and other amounts paid to Defendants in relation to the sale and placement of Event Protection Insurance with disbursement to be as directed by the Court or trier of fact in its discretion and equitable powers;

F.    Injunctive, declaratory and equitable relief, including that (a) enjoining the payment of commissions to unlicensed persons / entities including Ticketmaster/Live Nation, and (b) declaring void and/or rescinding all of contracts that relate to the payment, direct or indirect, of insurance commissions, referral fees, rebates and/or other amounts to unlicensed persons/entities in relation to Event Protection Insurance, and placing the parties back in the position they were in before the contracts were entered, including the refund of funds no less than equal to the amount of unlawful commissions exchanged;

G.    A public injunctive relief including (a) enjoining all future payment of commissions to unlicensed persons/entities including Ticketmaster/Live Nation; (b) requiring disclosure of commission payments to entities; (c) corrective advertising and notice to members of the public advising them of amounts forwarded to third parties and whether such payment is lawful;

H.    Reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, and/or any other applicable law; and

I.    Such other and further relief as the Court deems just and proper and to which Plaintiff, the Class and members of the general public may be entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of her claims to the extent authorized by law.

Respectfully submitted,

ZIMMERMAN REED, LLP

Dated: August 18, 2020          By:  _____

Caleb Marker
Flinn Milligan
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile
caleb.marker@zimmreed.com
flinn.milligan@zimmreed.com

*Attorneys for Plaintiff*

46
COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Caleb Marker (SBN 269721)<br>Zimmerman Reed LLP<br>2381 Rosecrans Avenue, Suite 328, Manhattan Beach, CA 90245 | **COPY**<br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles |

TELEPHONE NO.: (877) 500-8780    FAX NO. *(Optional):* (877) 500-8781

ATTORNEY FOR *(Name):*  Plaintiff Sarah Smith

AUG 18 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By _____ , Deputy
Steven Drew

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Sarah Smith v. AGA Service Company d/b/a Allianz Global Assistance; Jefferson Insurance Co.,

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited    [ ] Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000) | [ ] Counter    [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **20STCV31433**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 18, 2020
Caleb Marker
_____                    ▶ _____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

BY FAX

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Caleb Marker (SBN 269721)<br>Zimmerman Reed LLP<br>2381 Rosecrans Avenue, Suite 328, Manhattan Beach, CA 90245<br><br>TELEPHONE NO.: (877) 500-8780    FAX NO. *(Optional):* (877) 500-8781<br>ATTORNEY FOR *(Name):* Plaintiff Sarah Smith | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Sarah Smith v. AGA Service Company d/b/a Allianz Global Assistance; Jefferson Insurance Co.,

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel       e. [ ] Coordination with related actions pending in one or more
        issues that will be time-consuming to resolve                courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence                court
                                                          f. [ ] Substantial postjudgment judicial supervision
3.  Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4.  Number of causes of action *(specify):* Four (4)
5.  This case [x] is  [ ] is not   a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 18, 2020
Caleb Marker
_____          ▶ _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
*   Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
*   File this cover sheet in addition to any cover sheet required by local court rule.
*   If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
*   Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

# COPY

| SHORT TITLE Sarah Smith v. AGA Service Company, et al. | CASE NUMBER 20STCV31433 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**BY FAX**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Sarah Smith v. AGA Service Company, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Sarah Smith v. AGA Service Company, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Sarah Smith v. AGA Service Company, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐  A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐  A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐  A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐  A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐  A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐  A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐  A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐  A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐  A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐  A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐  A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐  A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐  A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐  A6160  Abstract of Judgment | 2, 6 |
| | | ☐  A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐  A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐  A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐  A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐  A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐  A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐  A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐  A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐  A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐  A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐  A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐  A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐  A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐  A6190  Election Contest | 2 |
| | | ☐  A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐  A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐  A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 3 of 4

| SHORT TITLE: Sarah Smith v. AGA Service Company, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br><br>7060 Hollywood Blvd |
|---|---|

| CITY:<br>Hollywood | STATE:<br>CA | ZIP CODE:<br>90028 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __August 18, 2020__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**08/18/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: S. Drew Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>20STCV31433 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Daniel J. Buckley | 1 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record     Sherri R. Carter, Executive Officer / Clerk of Court

on 08/19/2020 _____                          By S. Drew _____, Deputy Clerk
     (Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15) <br> LASC Approved 04/11 <br> For Optional Use

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
      <span>(INSERT DATE)</span>                                                     <span>(INSERT DATE)</span>
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR PLAINTIFF)
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____ )
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____ )
Date:

_____        ➢  _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:              FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use         **STIPULATION – DISCOVERY RESOLUTION**
                  Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____ )

➢ _____
(ATTORNEY FOR _____ )

➢ _____
(ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)          **INFORMAL DISCOVERY CONFERENCE**
LASC Approved 04/11     (pursuant to the Discovery Resolution Stipulation of the parties)
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| COURTHOUSE ADDRESS: | |
| PLAINTIFF: | |
| DEFENDANT: | |

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR PLAINTIFF)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)

Date: _____

_____    ➢ _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____    _____
                                                        JUDICIAL OFFICER

 Superior Court of California, County of Los Angeles

---

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

<u>What is ADR?</u>

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

<u>Advantages of ADR</u>
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

<u>Disadvantages of ADR</u>
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

<u>Main Types of ADR:</u>

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

### How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

   These organizations cannot accept every case and they may decline cases at their discretion.
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
     - Free, day- of- trial mediations at the courthouse. No appointment needed.
     - Free or low-cost mediations before the day of trial.
     - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
       http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

---

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  http://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 01/20
For Mandatory Use

2